# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

TRACY HUNTER,

               Petitioner,

     -vs-

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,

              Respondent.

:

:

:

:

:

Case No. 3:09-cv-393

District Judge Thomas M. Rose
Magistrate Judge Michael J. Newman

---

## REPORT AND RECOMMENDATION[1]

---

Pursuant to 28 U.S.C. § 2254, Petitioner ("Petitioner" or "Hunter") brings this petition for a writ of *habeas corpus*. Petitioner was convicted of aggravated burglary with a firearm specification in May 2007 and is currently serving his eleven-year sentence in Respondent's custody. Proceeding *pro se*, Petitioner pleads the following grounds for relief:

**GROUND ONE**: Petitioner was prejudiced when the State of Ohio use[d] a peremptory challenge in a racially discriminatory fashion thereby violating Petitioner's Due Process and Equal Protection rights pursuant to the Fifth, Sixth, and Fourteenth Amendment to the United States Constitution.

**GROUND TWO**: The Petitioner has a right to effective assistance of counsel under the Sixth Amendment pertaining to direct appeal.

**GROUND THREE**: Petitioner's conviction for the firearm specification is contrary to the law.

---

[1]Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

**(SECOND) GROUND THREE**:[2] The conviction for burglary is against the manifest weight/sufficiency of the evidence where the State's star witness offered misleading and false testimony that Petitioner forced himself into the home.

**GROUND FOUR**: The Petitioner's trial court erred to the prejudice by overruling the request for Criminal Rule 29 motion.

**GROUND FIVE**: Petitioner's conviction for a firearm specification is against the manifest weight of the victim's evidence.

**GROUND SIX**: Petitioner avers that he was denied his basi[c] right to a fair trial because of prosecutorial misconduct.

**GROUND SEVEN**: Petitioner contends he was denied effective assistance of counsel at the appellate stage in violation of the Sixth and Fourteenth Amendments to the United States Constitution when appellate counsel [failed] to raise that the trial court lacked procedural and subject matter jurisdiction.

Doc. 3 (capitalization altered).

# I. PROCEDURAL BACKGROUND

In December 2006, Petitioner was indicted by the Montgomery County, Ohio grand jury for one count of aggravated burglary with a firearm specification. Doc. 6-1 at PageID 65. He was tried to a jury in February 2007, which resulted in a mistrial due to a hung jury. *Id.* at PageID 67. Petitioner was then re-tried to a jury, and was found guilty of aggravated burglary with a firearm specification. *See id.* at PageID 68-69. Petitioner was sentenced to eight years imprisonment for the aggravated burglary count and three years for the firearm specification, to be served consecutively, for a total of eleven years. *See id.*

---

[2]Petitioner has labeled two separate grounds for relief as "Ground Three." *See* doc. 3 at PageID 27-28. In order to be consistent with the labels for the other grounds for relief in Petitioner's *habeas* petition, the Court will refer to the latter Ground Three as "(Second) Ground Three."

## A. Direct Appeal

With the assistance of counsel, Petitioner timely appealed his conviction and sentence to the Ohio Second District Court of Appeals, raising one assignment of error:

> I. The trial court erred in permitting the [S]tate to use a [peremptory] challenge in a racially discriminatory fashion thereby denying Appellant equal protection under the law as guaranteed by the United States and Ohio Constitutions.

Doc. 6-1 at PageID 71-82. On June 13, 2008, the Ohio Second District Court of Appeals affirmed Petitioner's conviction. *State v. Hunter*, No. 22201 (Ohio Ct. App. 2d Dist. June 13, 2008), doc. 6-1 at PageID 138-49.

Proceeding *pro se*, Petitioner timely appealed to the Ohio Supreme Court, raising the same arguments that were raised in his brief to the Ohio Court of Appeals. Doc. 6-1 at PageID 150-59. On November 14, 2008, the Ohio Supreme Court dismissed his appeal as not involving any substantial constitutional question. *State v. Hunter*, No. 2008-1406 (Ohio Nov. 14, 2008), doc. 6-1 at PageID 172.

## B. Application to Re-open His Direct Appeal

Petitioner also filed a *pro se* application to re-open his direct appeal pursuant to Ohio App. R. 26(B). Doc. 6-1 at PageID 175-91. In his application, Petitioner asserted the following assignments of error:

> I. Appellant's conviction for the firearm specification is contrary to law.
> II. The conviction for burglary is against the manifest weight/sufficiency of evidence where the State's star witness offered misleading and false testimony that Hunter forced his way into the victim's home.
> III. The trial court erred when it overruled Hunter's Crim. R. 29 Motion for acquittal.
> IV. Appellant's conviction for a firearm specification was against the manifest weight of the evidence.
> V. The Appellant contends he was denied his right to a fair trial because of

prosecutorial misconduct.

VI.     The Appellant contends that he was denied effective assistance of appellate counsel in violation of the Sixth and Fourteenth Amendments to the United States and Ohio Constitution when appellate counsel failed to raise upon direct appeal, that the trial court lacked procedural, and subject matter jurisdiction.

*Id.* The Ohio Court of Appeals denied his application to re-open his appeal. *State v. Hunter*, No. 22201 (Ohio Ct. App. 2d Dist. Dec. 15, 2008), doc. 6-1 at PageID 235-38.

Petitioner appealed *pro se* to the Ohio Supreme Court, making general assertions regarding his Sixth Amendment right to counsel and raising the same six assignments of error. *See* doc. 6-1 at PageID 241-54. On April 14, 2009, the Ohio Supreme Court dismissed Petitioner's appeal as not involving any substantial constitutional question. *State v. Hunter*, No. 2009-0208 (Ohio Apr. 14, 2009), doc. 6-1 at PageID 261.

## II. ANALYSIS

### A. AEDPA Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when the state court decides a federal constitutional claim on the merits, the federal *habeas* court must defer to the state court decision unless: (1) the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court"; or (2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

A state court decision is considered "contrary to . . . clearly established Federal law" when it is "diametrically different, opposite in character or nature, or mutually opposed." *Nields v. Bradshaw*, 482 F.3d 442, 449 (6th Cir. 2007) (citation omitted). To be deemed "an unreasonable application of . . . clearly established Federal law," 28 U.S.C. § 2254(d), a state court's decision

-4-

must be "'objectively unreasonable,' not simply erroneous or incorrect." *Cornwell v. Bradshaw*,

559 F.3d 398, 405 (6th Cir. 2009*)* (citation omitted).  Further, under 28 U.S.C. § 2254(e)(1), a state

court's factual findings are presumed correct unless the petitioner rebuts them by clear and

convincing evidence.  *Id.*  This statutory presumption of correctness also extends to factual findings

made by a state appellate court's review of trial court records.  *Mason v. Mitchell*, 320 F.3d 604, 614

(6th Cir. 2003).

Under principles of comity, the state courts should have the first opportunity to hear *habeas*

claims.  *O'Sullivan v. Boerckel,* 526 U.S. 838, 844-45 (1999).  Accordingly, a federal *habeas*

petitioner must exhaust state court remedies -- by fairly presenting his or her constitutional claims

to the state's highest court -- before raising them in federal court.  28 U.S.C. § 2254(b); *O'Sullivan*,

526 U.S. at 844-45.  If (1) the state court rejected the petitioner's claim based on his or her failure

to comply with the state procedural rules, or (2) the petitioner failed to exhaust his or her state court

remedies and no avenue of relief remains open, or it would otherwise be futile to pursue the state

remedies, the petitioner has waived that claim for *habeas* review under the procedural default

doctrine.  *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

## B.  Ground One

In Ground One, Petitioner argues that the prosecutor improperly exercised peremptory

challenges to strike two African American jurors (Ms. Swanson and Ms. Jones) based on their race

in violation of the Equal Protection Clause.  *See* doc. 3 at PageID 24-27; doc. 12 at PageID 394-99.

Petitioner properly exhausted Ground One in the state courts.  The Ohio Court of Appeals

rejected this claim on the merits as follows:

> In his sole assignment, Hunter contends that the trial court erred by
> permitting the State to use its peremptory challenges to dismiss the only two African-

American jurors from the venire in violation of *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712.  The trial court allowed peremptory challenges to be made in chambers. After both parties had passed on any further peremptory strikes in chambers and the trial court had read the names of the jurors who were to be seated, defense counsel objected pursuant to *Batson* that the State had excused the only two African-American jurors on the panel. The State offered its reasons for the excusal of both jurors, and the trial court overruled the *Batson* challenge. The trial then proceeded with an all Caucasian jury.

Initially, it should be noted that a *Batson* challenge must be made in a timely manner. We have previously held that a *Batson* challenge is timely if it is made before the jury is sworn, with the better practice being that the objection be made contemporaneous with the peremptory challenge. *State v. Brooks* (June 4, 1987), Montgomery App. No. 9190, [1987 Ohio App. LEXIS 7388]; *State v. Robertson* (1993), 90 Ohio App.3d 715, 630 N.E.2d 422. Waiting to proffer an objection on *Batson* grounds until after the jury is sworn prevents the trial court from noticing and correcting that error. In the instant matter, the record establishes that defense counsel raised a *Batson* challenge in the trial judge's chambers before the jury had been sworn or any members of the jury had been released. Thus, we hold that the *Batson* challenge was made in timely fashion, and that no prejudice resulted from defense counsel's failure to raise the objection immediately following the State's peremptory challenge.

The state's use of peremptory challenges in order to exclude potential jury members based solely on their race is prohibited under the Equal Protection Clause of the Fourteenth Amendment. *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69. In *Batson*, the Supreme Court set forth a three step test for determining whether a prosecutor's use of a peremptory challenge is racially motivated.

First, the opponent of the peremptory challenge must set forth a prima facie case of racial discrimination. *Id*. at 82. The opponent must point to facts and other circumstances which are sufficient to raise an inference that the prosecution used its peremptory challenge in a racially motivated way. *Id*. In this case, however, the court made no ruling on whether the Defendant made a prima facie showing of discrimination. Rather, the prosecutor went on to offer race-neutral explanations for both of the excused African-American jurors and the judge overruled the *Batson* challenge based on those explanations. The Supreme Court has noted that "once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Hernandez v. New York* (1991), 500 U.S. 352, 359, 111 S.Ct. 1859.

The burden then shifts to the prosecution to offer a race neutral reason for the challenge. At this stage the explanation must be more than an affirmation of good faith, but need not rise to the level of a challenge for cause. *State v. Manns*, 169 Ohio App. 3d 687, 2006-Ohio-5802, [864 N.E.2d 657], citing *Purkett v. Elem* (1995), 514 U.S. 765, 768, 115 S.Ct. 1769. Unless a discriminatory intent is inherent, the

explanation will be deemed race neutral. *Hernandez*, 500 U.S. at 360.

Finally, the trial court must determine whether the race-neutral reason advanced by the prosecution is merely a pretext for purposeful racial discrimination. Since this stage of the analysis rests largely on the trial court's evaluation of the prosecutor's credibility, an appellate court is required to give the trial court's findings great deference. *State v. Manns*, 169 Ohio App. 3d 687, 2006-Ohio-5802, [864 N.E.2d 657], citing *Hicks v. Westinghouse Materials Co.* (1997), 78 Ohio St. 3d 95, 102, 676 N.E.2d 872; *Hernandez*, 500 U.S. at 365; *Miller-El v. Dretke* (2005), 545 U.S. 231, 125 S.Ct. 2317.

In making this determination, the U.S. Supreme Court has set forth several factors to consider: 1) the bare statistics; 2) the similarity of answers to voir dire questions between the African-American prospective jurors who were struck and the answers of the non-African-American who served; 3) broader patterns of practice, including jury shuffling; 4) disparate questioning of African-American jurors; and 5) evidence that the prosecutor's office has historically discriminated against African-Americans in jury selection. *Miller-El*, 545 U.S. 231, 125 S.Ct. 2317.

In the instant case, there is no allegation that the prosecutor's office has historically discriminated against African-American jurors, no allegation or indication that the prosecutor in this case questioned African-American jurors differently, nor any evidence of broader patterns of practice, such as jury shuffling.

Further, there is also no evidence that the "bare statistics" support a *Batson* challenge. While no African-American jurors served on the jury, there were only two prospective jurors who were African-American. The lack of African-American jurors could very well be the result of so few African-American jurors being randomly selected for the jury pool. *See e.g. State v. Frazier*, 115 Ohio St.3d 139, 873 N.E.2d 1263, 2007-Ohio-5048, (holding that lack of African-Americans on chosen jury did not satisfy the "bare statistics" factor since jury pool only included six African-Americans out of 86 prospective jurors in the original jury pool for Frazier's trial, and only three African-Americans out of a final jury pool of 44 prospective jurors).

The remaining factor looks at the similarity of the answers between African-American jurors struck from the panel and the answers of Caucasian jurors who served on the jury. In *Miller-El*, the Supreme Court held the following:

"If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar non-black who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson*'s third step." 545 U.S. at 241.

In *Miller-El*, the Supreme Court compared the responses of African-American panelists stricken from the jury with those of their Caucasian counterparts who served on the jury in light of the prosecution's purported race neutral reasons for striking the African-American jurors. The Supreme Court found that the responses were strongly similar, with some insignificant differences. Notably, the Court found that the prosecution struck an African-American juror based on his views regarding the death penalty, but did not strike Caucasian jurors who expressed the same opinion, despite having ample peremptory challenges to do so. The Court

went on the state that "the fact that [the prosecutor's] reason also applied to these other panel members, most of them white, none of them struck, is evidence of pretext." *Id.* at 248. *See also State v. Belcher* (1993), 89 Ohio App.3d 24, 623 N.E.2d 583 (holding that disparate treatment of African-American jurors giving similar answers to Caucasian jurors weighs heavily against any race-neutral explanation).

The state used its second peremptory challenge to strike the first African-American juror, Regina Swanson. When prompted for its reasoning following the *Batson* challenge, the prosecutor stated the following:

"*** And that was for a reason that was not based on race. It was based on her past. She had been in contact with those convicted of crimes, those victims of crimes. She had a real problem because she had been an alternate juror. So much so that she had to come back here and talk to us and then her only reason was well, I just didn't like it. . ." (T. 105-106).

Ms. Swanson testified during voir dire that her brother had been robbed and shot, leaving him paralyzed. When asked about this, she indicated some doubt about the justice system:

"Q: . . .I[s] there anything about going through that experience that affects your perception of police one way or another?

"A: Kind of.

"Q: How? Can you talk about that?

"A: I just think that sometimes the system doesn't work."

(T.46).

However, Ms. Swanson did go on to state that she could be fair and impartial and could obey instructions given to her by the judge.

More importantly, when asked about her prior jury service, Ms. Swanson replied that she had previously been an alternate and that it had not been a good experience. She did not wish to discuss it in the presence of the other jurors and was later interviewed in chambers. When the trial judge asked her about her experience she replied:

"A: I was an alternate juror in a civil case and I felt that, well, just, I feel as an alternate that I shouldn't have been sitting on the - sitting up in the jury box listening to all the evidence."

She was then questioned by the prosecution about her experience as an alternate:

"Q: You think you should have been able to vote since you had to listen to the evidence?

"A: No. It wasn't that. I just felt I shouldn't have been sitting out there not having a part in, I guess, the final part."

(T. 61-62).

After prompting by the court, she did say she would serve as an alternate juror if chosen and that she did understand why alternate jurors were chosen.

Ms. Swanson was the only juror who indicated that they felt the system did not work as a result of her experience as an alternate juror. After a thorough review of Ms. Swanson's responses to the questions asked of her during voir dire, it is

abundantly clear that the State possessed a sufficient race-neutral basis upon which to excuse her and overcome a *Batson* challenge.

Ms. Jones took Ms. Swanson's seat after she was excused, and the State used its next peremptory challenge to dismiss Ms. Jones from the panel. When prompted for a race-neutral reason following the *Batson* challenge, the prosecution stated the following:

"During the questions about drugs she said that she would not give someone who-I don't know her specific word if it was use or addicted to drugs, the same credibility as someone else. That there was an affect on the mind of someone who has used drugs. Knowing the state's case, that is the basis for the excusal." (T. 106).

Defense counsel replied that other Caucasian members of the panel agreed with Ms. Jones' logic and were not excused. (T. 107). However, defense counsel also stated the following:

"First of all, that's a credibility issue. We're asking about factors that lead to credibility. They're allowed to weigh credibility. Secondly, as pertains to the *Batson* challenge, Ms. Berry agreed with that logic. Mr. Bean agreed with that logic. *Mr. Whitley agreed with [that] logic. All also, Mr. Whitley was struck.* Ms. Berry was not struck. Mr. Bean was not struck.

The trial judge overruled the *Batson* challenge, stating:

"I am going to overrule the *Batson* motion. I think there is a reason for it. I think, furthermore, the questioning - you elicited the questioning. I mean, you did it. You brought it out. They didn't do it. I'm going to overrule. We've got our jury." (T. 107)

The line of questioning to which the prosecution referenced was elicited during the defense counsel in his voir dire:

"Q: * * * If it's on a level playing field and you have one person who has used some difficult drugs and you have people that don't had [sic] use of that drugs, do they get the same credibility?

"Let's try Ms. Jones?

"A: (Indiscernible)

"Q: Do you want me to call on somebody else?

"A: No, not really

"Q: It's like in school in third grade when you're just hoping, don't call on me, don't call on me.

"A: That's so hard. I'm going to say no.

"Q: Okay. And that's difficult to answer, isn't it?

"A: Un-huh-Affirmative.

"Q: I mean you want to do the, you know, true blue American, everybody is equal, but the fact it, when you look at it, you'd say no. Why would you say no?

"A: I think the person who uses drugs I think it would have an effect on their mind.

"Q: Okay? The kind of things we've just been talking about?

"A: Yeah.

"Q: Where they can rationalize actions, they can rationalize a lot of things to

further what they want even if they don't see it?

      "A: Right."

(T. 80-81).

      When interviewed by defense counsel, David Whitley, a Caucasian male, gave similar answers to those of Ms. Jones on the subject of the credibility of an individual who has used crack cocaine:

      "Q: Mr. Whitley, what's your perception of crack cocaine?

      "A: A street drug, highly addictive.

      "Q: Do you think someone could use it recreationally?

      "A: No. I've known people that have used it and I don't know anybody that uses it recreationally.

      "Q: Okay. Do you think that if someone uses crack cocaine they are necessarily an addict?

      "A: I don't know about addict. I don't know anybody that's ever used crack that their life has ever gotten better.

      "Q: That's a true statement. Okay. Why do you say you don't know about an addict?

      "A: Addiction is something -- I know that the drug is highly addictive. I don't know that after one use you're necessarily addicted.

      "Q: Okay."

      Of the panelists who expressed an opinion on the effect of drug use, Ms. Jones and Mr. Whitley were excused from the panel. Because the State used two of its peremptory challenges to excuse both an African-American and a Caucasian for providing the similar answers regarding the credibility of individuals who use drugs, Hunter cannot now claim that the reason for Ms. Jones' excusal was pre-textual based on her race. Although the State chose not to excuse every Caucasian panelist who gave similar answers to her, the State did dismiss Mr. Whitley, a Caucasian, who, by defense counsel's own admission, gave similar answers to those provided by Ms. Jones. Thus, the State's explanation for striking Ms. Jones passes the race-neutral analysis because a similarly situated Caucasian juror was also stricken, and Batson was not violated in this instance.

      Hunter's assignment of error is overruled.

Doc. 6-1 at PageID (emphasis in original).

      The Equal Protection Clause prohibits the prosecution from using peremptory challenges in order to exclude potential jury members based on their race. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). As the Ohio Court of Appeals correctly recognized, there is a three-part analysis in determining whether the prosecution's use of a peremptory challenge violates *Batson*: (1) the defendant must make a *prima facie* case of discrimination; (2) the burden shifts to the prosecution

to provide a race-neutral explanation for exercising the peremptory challenge; and (3) "the defendant then has the opportunity to rebut the proffered race-neutral reason as pretext, and the trial court determines whether the defendant has established purposeful discrimination." *Akins v. Easterling*, 648 F.3d 380, 387 (6th Cir. 2011); *Batson,*476 U.S. at 96-98. The defendant "always bears the ultimate burden of persuasion." *Braxton v. Gansheimer*, 561 F.3d 453, 459 (6th Cir. 2009).

Petitioner first challenges the validity of the prosecution's race-neutral explanation for striking the two African American jurors. *See* doc. 3 at PageID 24-27; doc. 12 at PageID 394-99. The prosecution provided two reasons for using a peremptory challenge to strike Ms. Swanson: (1) her brother was robbed and shot; and, based on her perception of the related criminal proceedings, she stated, "sometimes the system doesn't work"; and (2) she was unsatisfied with her previous experience serving as an alternate juror in a civil case. Doc. 6-2 at PageID 319-20, 334-35, 377-78. As for Ms. Jones, the prosecution explained that the peremptory challenge was based on her statements during *voir dire* -- that she did not believe drug addicts are credible. *Id.* at PageID 353-54, 416-17.

To meet the State's burden on the second prong of the *Batson* analysis, the prosecution only needs to provide "an explanation based on something other than the race of the juror." *Hernandez v. New York*, 500 U.S. 352, 360 (1991). The explanation need only be facially valid. *Purkett v. Elem*, 514 U.S. 765, 768-69 (1995). Thus, "[u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Id.* (quoting *Hernandez*, 500 U.S. at 360). Under this standard, the Court finds that the prosecution's explanations -- for striking Ms. Swanson and Ms. Jones -- are valid.

Accordingly, the remaining issue for this Court to decide, with regard to Ground One, is whether the Ohio Court of Appeals properly adjudicated the third *Batson* prong -- finding that Petitioner had not rebutted the prosecution's race-neutral explanation and established discriminatory intent. To be granted *habeas* relief, Petitioner must show that the Ohio Court of Appeals' decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings; or was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d).

As a preliminary note, the third *Batson* prong is a factual question, given that "the question of discriminatory intent turns largely on an evaluation of credibility." *Akins*, 648 F.3d at 392 (internal quotations omitted). Accordingly, this Court must give "great deference" to the trial court's determination. *Id.* Further, under AEDPA, the state court's factual findings are presumed correct, unless Petitioner rebuts them by clear and convincing evidence. *Id.* Having reviewed the *voir dire* transcript, the Court agrees with the Ohio Court of Appeals' determination -- that the record supports the factual bases for the prosecution's peremptory challenges as to prospective jurors Ms. Swanson and Ms. Jones. *See* docs. 6-2, 16. In other words, the state courts' factual determination was not objectively unreasonable to warrant *habeas* relief under 28 U.S.C. § 2254(d)(2). *See Akins*, 648 F.3d at 392-94.

Petitioner further contends that the Ohio Court of Appeals improperly applied *Miller-El v. Dretke*, 545 U.S. 231 (2005), because it compared the answers of African Americans who were struck from the jury with the answer of a non-African American who was also struck, when, under *Miller-El*, the court should have used the answers of the non-African Americans who *served* on the jury as a comparison group. *See* doc. 12 at PageID 397-98.

Petitioner correctly notes that, in *Miller-El*, the Court found the prosecution's decision -- to strike African Americans from the jury, while allowing non-African Americans, who had provided similar answers, to serve on the jury -- was *one* factor indicating purposeful discrimination under *Batson*. *See Miller-El*, 545 U.S. at 241-52. However, this does not necessarily establish that the appellate court's decision was an unreasonable application of clearly established Supreme Court precedent. In *Miller-El*, the Court emphasized the overwhelming evidence of racial discrimination during the jury selection in that case including: statistics showing that ten of the twenty African Americans on the 108-person venire panel were peremptorily struck by the prosecution, and only one African American ultimately served on the jury, *id.* at 240-41; "broader patterns of [discriminatory] practice during the jury selection," *id.* at 253-55; disparate questioning of African American jurors, *id.* at 255-63; and evidence that the prosecutor's office had historically discriminated against African Americans in jury selection. *Id.* at 263-66.

In contrast to *Miller-El*, Petitioner's contentions of racial discrimination are unsupported here. Indeed, the Court of Appeals noted the suggestive circumstances in *Miller-El* were not present in Petitioner's case. *See* doc. 6-1 at PageID 143. Petitioner merely points to potential jurors who provided somewhat similar responses -- with regard to their experience with the court system and their perception of drug users/addicts -- yet were not struck by the prosecution. *See* doc. 12 at PageID 396-99. He also asserts there was disparate questioning of African American jurors and evidence of historical discrimination in the prosecutor's office. *See id.* This latter allegation finds no support in the record. Having carefully reviewed the *voir dire* transcript and fully considered the parties' *habeas* briefs, the Court finds these arguments unsupported and unpersuasive.

Accordingly, the Ohio Court of Appeals' decision was not contrary to, nor an unreasonable

application of, Supreme Court precedent under 28 U.S.C. § 2254(d)(1).[3]  The Court of Appeals

accurately cited the applicable standards under *Batson* and *Miller-El* and reasonably concluded that

Petitioner's counsel had not met his burden of showing purposeful discrimination.

For the foregoing reasons, Ground One should be dismissed.

### C.  Ground Two

In Ground Two, Petitioner asserts ineffective assistance of appellate counsel for failing to

raise the following arguments:[4] (1) his burglary conviction is against the manifest weight/sufficiency

of the evidence; (2) the trial court erred when it overruled his Ohio Crim. R. 29 motion for acquittal;

(3) his firearm specification conviction was against the manifest weight of the evidence; (4)

prosecutorial misconduct; and (5) the trial court lacked jurisdiction.[5]  *See* doc. 12 at PageID 400;

doc. 6-1 at PageID 175-90, 242.

The Ohio Court of Appeals, noting that Petitioner had not filed the trial court transcripts,

determined that Petitioner had failed to raise a genuine issue as to whether he was deprived effective

assistance of appellate counsel.  Doc. 6-1 at PageID 235-38.  This constitutes a decision on the

merits.  *See Goff v. Bagley*, 601 F.3d 445, 464 n.8 (6th Cir. 2010).  Therefore, Petitioner's claim is

not procedurally barred.  *See id.*  Nonetheless, this Court's review of Petitioner's ineffective

---

[3]As stated earlier, a state court decision must be "diametrically different, opposite in character or nature, or mutually opposed" to, or an objectively unreasonable application of, Supreme Court precedent to warrant *habeas* relief under 28 U.S.C. § 2254(d)(1). *Cornwell*, 559 F.3d at 405; *Nields*, 482 F.3d at 449.

[4]In the Return of Writ, Respondent asserts that Ground Two fails to state a claim because Petitioner did not specify how his appellate counsel was ineffective. *See* doc. 6 at PageID 44-45.  However, Petitioner clarified his second ground for relief in his Reply. *See* doc. 12 at PageID 399-401.  These sub-claims are the same claims that he raised in his Ohio App. R. 26(B) application. *See* doc. 6-1 at 175-91.

[5]These sub-claims are also the remaining grounds for relief in his *habeas* petition.

assistance of appellate counsel claims is "limited to the record that was before the state court."

*Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011). Accordingly, to obtain *habeas* relief

under 28 U.S.C. § 2254(d)(1), Petitioner must demonstrate that the Ohio Court of Appeals' denial

of his Ohio App. R. 26(B) application was contrary to, or unreasonable application of, clearly

established Supreme Court precedent based solely on the record before the state court, which, in this

case, excludes the trial transcripts. *See Bray v. Andrews,* 640 F.3d 731, 737 (6th Cir. 2011).

In light of the limited evidence available to the court in reviewing Petitioner's ineffective

assistance of appellate counsel claim, the Ohio Court of Appeals only briefly addressed the

underlying theme of Petitioner's Ohio App. R. 26(B) claims -- that the testimony of Gary Hand (the

victim) was false and therefore could not legally support Defendant's criminal conviction. *See* doc.

6-1 at PageID 237-38. The court addressed this issue as follows:

> Finally, Hunter's primary argument in his Application to Re-Open is that the testimony of Gary Hand lacked sufficient credibility to support a conviction. The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass* (1967), 10 Ohio St.2d 230, 231, 227 N.E.2d 212. This court will not substitute its judgment for that of the trier of fact on the issues of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley* (Oct. 24, 1997), Champaign App. No. 97-CA-03. Given the deference a reviewing court must accord to the factfinder's assessment of credibility, Hunter's proposed assignments of error based on Hand's "false testimony" lack a reasonable probability of success. In other words, Hunter has not raised "a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." *See Strickland v. Washington* (1984), 466 U.S. 668, 104 S. Ct. 2052.

*Id.*

To prevail on his ineffective assistance of counsel claim, Petitioner must meet the two-part

*Strickland v. Washington* test by demonstrating that his counsel's performance was deficient and that

he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Because there

is "a strong presumption that counsel's conduct falls within a wide range of reasonable professional

assistance," to meet the deficiency prong, the defendant must demonstrate that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688-90. To satisfy the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Accordingly, "counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

Without being able to consider the trial transcripts, it is difficult, if not impossible, for the Court to evaluate whether Petitioner's appellate counsel should have raised the following sub-claims: Petitioner's conviction was against the manifest weight or sufficiency of the evidence; the trial court erred in overruling his Ohio Crim. R. 29 motion for acquittal; and prosecutorial misconduct. Further, as the Ohio Court of Appeals acknowledged, the crux of Petitioner's sub-claims is that the State's main witness falsely testified. Absent other evidence, this is a credibility issue, which is a matter reserved for the trier of fact. *See Caldwell v. Russell*, 181 F.3d 731, 738 (6th Cir. 1999).

The only sub-claim which does not require a review of the trial transcript is Petitioner's argument that the court did not have jurisdiction over him due to an allegedly defective indictment. *See* doc. 6-1 at PageID 188-90. Specifically, Petitioner asserts that the indictment failed to (1) state a *mens rea* element, and (2) identify the underlying offense for the burglary charge. *See id.* Contrary to Petitioner's claim, however, the indictment does contain a *mens rea* element: "trespass in an occupied structure . . . with purpose to commit in the structure . . . any criminal offense." *Id.* at PageID 65.

Further, an indictment which tracks the language of the applicable criminal statute puts a defendant on sufficient notice of the charges against him. *See State v. Murphy*, 605 N.E.2d 884, 907 (Ohio 1992). The aggravated burglary statute states that the intruder must have the purpose to commit "any criminal offense," and does not specify what type of criminal offense is required. *See* Ohio Rev. Code § 2911.11(A) (2006). Accordingly, the indictment was not defective for failing to specifically state what criminal offense Petitioner intended to commit inside the victim's home. Thus, because such a claim would not have succeeded on appeal, Petitioner's counsel was not ineffective for not raising it. *See McFarland*, 356 F.3d at 699.

Therefore, the Court finds the state court's decision -- to deny Petitioner's ineffective assistance of appellate counsel claim -- was reasonable, and not contrary to, nor an unreasonable application of, *Strickland v. Washington*.

### D. Ground Seven

In Ground Seven, Petitioner raises the same argument that he did as a sub-claim in Ground Two -- ineffective assistance of appellate counsel for failing to argue that the trial court lacked jurisdiction over him due to an allegedly defective indictment -- as a separate ground for relief. As the Court already rejected this claim *supra*, Ground Seven should also be dismissed.

### E. Remaining Grounds

Petitioner's remaining grounds (Grounds Three, (Second) Three, Four, Five, and Six) are all procedurally defaulted based on his failure to exhaust those claims.[6] An Ohio App. R. 26(B)

---

[6]The Court also notes that Ground Five and a portion of (Second) Ground Three -- claiming that his aggravated burglary and firearm specification convictions are against the manifest weight of the evidence -- are not cognizable *habeas* claims. A federal *habeas* court only has jurisdiction to adjudicate a state prisoner's claim that his or her confinement violates the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). A claim that a conviction is against the manifest weight of the evidence is a state law claim. *See Tibbs v. Florida*, 457 U.S. 31, 45 (1982); *Hughes v. Warden*, No. 1:10-cv-91, 2011 U.S. Dist. LEXIS 54131,

application preserves only the ineffective assistance of appellate counsel arguments for *habeas* review, not the underlying substantive arguments. *Wogenstahl v. Mitchell*, 668 F.3d 307, 338 (6th Cir. 2012). Petitioner did not raise these claims on direct appeal. *See* doc. 6-1 at PageID 71-82. Further, there are no avenues of relief for Petitioner to now present these claims to the state courts. A criminal defendant is entitled to one direct appeal. *See State v. Fischer*, 942 N.E.2d 332, 342 (Ohio 2010). The 180-day limitations period to file a petition for post-conviction relief in the trial court has long passed, *see* Ohio Rev. Code § 2953.21(A)(2), and Petitioner has not shown that he would satisfy the requirements to file an untimely petition under Ohio Rev. Code § 2953.23(A). Accordingly, because it would be futile for Petitioner to present these claims to the state court now, he is procedurally barred from bringing them in his federal *habeas* proceedings. *See Williams,* 460 F.3d at 806.

Therefore, the Court cannot review the remaining grounds for relief on the merits because Petitioner cannot "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Here, Petitioner's ineffective assistance of appellate counsel claim -- properly raised and exhausted in his Ohio App. R. 26(B) proceedings, *see* doc. 6-1 at PageID 175-261 -- could arguably constitute such cause. *See Edwards v. Carpenter*, 529 U.S. 446, 450-52 (2000). To overcome procedural default, however, Petitioner must show that his appellate counsel was so ineffective that it rose to the level of a constitutional violation under *Strickland*. *McFarland*, 356 F.3d at 699-700. As explained

---

at *9 (S.D. Ohio Apr. 27, 2011). The U.S. Constitution only prohibits a conviction based on legally insufficient evidence. *Tibbs*, 457 U.S. at 45. Therefore, those claims should be dismissed for this additional reason.

above, Petitioner has failed to do so: he has not demonstrated that there is a reasonable probability that his claims would have prevailed on appeal, had they been raised. Therefore, the remaining grounds for relief should be dismissed.

### III. RECOMMENDATION

Based on the foregoing analysis, it is **RECOMMENDED** that Petitioner's § 2254 petition for a writ of *habeas corpus* be **DISMISSED** with prejudice and this case be **TERMINATED** on the Court's docket.

Reasonable jurists would not disagree with the recommended dispositions on all grounds for relief. Therefore, if Petitioner seeks to appeal, the Court **RECOMMENDS** that Petitioner be **DENIED** a certificate of appealability.

April 30, 2012                                              s/ **Michael J. Newman**
                                                           United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).